**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William J. Carey

v.                                           Civil No. 06-cv-479-PB

Wrenn, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff William J. Carey has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have abridged his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution (document nos. 4, 16 and 17-19).[1]   Seeking declaratory, injunctive and monetary relief, he brings this action against William L. Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), David Sullivan, New Hampshire Superior Court Judge and several employees of the New Hampshire State Prison ("NHSP") and the Northern New Hampshire Correctional Facility ("NCF").[2]

---

[1]The amended complaint (document no. 19) supercedes all previous complaints (document nos. 1, 6-7 and 13-15) filed by Carey.

[2]The following NHSP employees are named as defendants: Gregory Crompton, former Deputy Warden of the NHSP; Kimberly Lacasse, Classification Supervisor; Richard Manseau, Classification Department; Robert Thyng, Unit Manager; and Henry Lemieux, Dentist.  The following NCF employees are named as

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I conclude that Carey has alleged the following claims: (1) an Eighth Amendment denial of adequate medical care claim against Lacasse, Manseau and Watson; and (2) a First and Fourteenth Amendment retaliation claim against Watson, Blaisdell, Crompton and Wrenn.  I recommend dismissal of all remaining claims.

Standard of Review

In reviewing a pro se complaint, this court must construe the pleading liberally and in favor of the pro se litigant.  <u>See</u> <u>Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments,"

defendants: Lawrence Blaisdell, Acting Warden; and Michelle Watson, Case Manager.

2

not bald assertions, must be accepted as true).  This review
ensures that pro se pleadings are given fair and meaningful
consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49
(1st Cir. 1988).  I apply this standard in reviewing Carey's
complaint.

<u>Factual Background</u>

Crediting the factual allegations in the complaint in the
light most favorable to Carey, the material facts are as follows.
Carey is currently incarcerated at the NCF, having been
transferred from the NHSP.  During the course of his
incarceration at the NHSP and the NCF, prison officials allegedly
subjected him to constitutional deprivations in violation of his
rights under the First, Eighth and Fourteenth Amendments.  While
incarcerated at the NCF and NHSP, Carey claims, he was denied
adequate medical and dental care and subjected to verbal abuse
and inhumane conditions of confinement.  He further alleges that
defendants retaliated against him for filing administrative
grievances, denied him meaningful access to the courts and denied
his request for a prison transfer to the Lakes Region Facility, a
facility with more amenable and safer conditions.  Lastly, Carey
alleges during the course of his criminal proceedings, a New

Hampshire Superior Court judge acted improperly by imposing his sentence and suggesting to the NHDOC that he complete certain program requirements as a condition of his parole.  He now brings this action pursuant to Section 1983, alleging that defendants' acts and omissions rise to the level of constitutional deprivations.

Discussion

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Carey's Section 1983 action is that prison officials subjected him to the following constitutional deprivations in violation of his federally protected rights under the First, Eighth and Fourteenth Amendments.

A.    <u>Eighth Amendment Claims</u>

1.    Denial of Adequate Medical Care

Carey alleges that Lacasse, Manseau and Watson transferred him to another prison facility, thereby causing a five-month delay in surgery to repair Carey's umbilical hernia.  Defendants' actions allegedly constitute a denial of adequate medical care under the Eighth Amendment.

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>See</u> <u>Estelle</u>, 429 U.S. at 97.  In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u>  Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  <u>Estelle</u>, 429 U.S. at 104-05.

"A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention.'"  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17–18 (1st Cir. 1995) (quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, Carey has described a serious medical need by alleging that he suffered from an umbilical hernia that required surgery. He has demonstrated deliberate indifference with respect to the defendants by alleging that once they had knowledge of his serious medical need, they nevertheless denied him proper care or failed to ensure that he received proper care.  Despite their knowledge of Carey's medical condition and his need for surgery, defendants transferred him to the NCF, thereby causing a five-month delay in surgery.  If true, the allegations may demonstrate that defendants prevented Carey from receiving prompt and essential medical treatment for a serious condition.  See Cotton v. Hutto, 540 F.2d 412, 415 (8th Cir. 1976) (facts pleaded by inmate may show deliberate indifference by prison officials with regard to denial of hernia surgery); Williams v. Sebek, Civil Action No. 05–1203, 2007 WL 790386 at *5 (W.D. Pa. March 14, 2007) (holding that facts that inmate eventually received surgery for hernia did not negate Eighth Amendment claim that defendants

6

knew or should have known that his medical condition required surgery and the ten-month delay resulted in inmate suffering pain and possible permanent injury); <u>Delker v. Maass</u>, 843 F. Supp. 1390, 1395-97 (D. Or. 1994) (holding that although inmate may not have suffered long-term physical harm from nearly two-year delay in surgery for inguinal hernia, inmate was injured by delay for purposes of his Section 1983 action since he experienced some pain, anxiety and restricted activity).  Accordingly, to the extent Carey alleges that the delay in surgery has caused him pain, anxiety or degeneration in his condition, I conclude that he has stated sufficient facts for an Eighth Amendment denial of adequate medical care claim against Lacasse, Manseau and Watson. Because he has failed to allege sufficient predicate facts against Crompton, Blaisdell and Wrenn, I recommend that the claims against them be dismissed.

2.   Denial of Adequate Dental Care

Construed liberally, the complaint alleges that Lemieux denied Carey adequate dental care for his broken teeth and injured jaw.  This claim is identical to a denial of adequate dental care claim alleged in <u>Carey v. Hillsborough County Department of Corrections, et al.</u>, 05-cv-274-PB.  As explained

7

more fully below, I recommend that the instant clam be dismissed
as duplicative.

    "[A] federal suit may be dismissed 'for reasons of wise
judicial administration . . . whenever it is duplicative of a
parallel action already pending in another federal court.'"
Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993)
(quoting Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram &
Sons, Inc., 572 F. Supp. 1210, 1213 (N.D. Ill. 1983)); accord
Adeogba v. Migliaccio, 266 F. Supp. 2d 142, (D.D.C. 2003).
District courts are accorded "a great deal of latitude and
discretion" in determining whether one action is duplicative of
another, but generally an action is duplicative if the "claims,
parties, and available relief do not significantly differ between
the two actions." Id. (quoting Ridge Gold, 572 F. Supp. at
1213); accord James v. AT & T Corp., 334 F. Supp. 2d 410, 411
(S.D.N.Y. 2004).

    Here, the Eighth Amendment claim based on denial of adequate
dental care is duplicative of the claim raised in Carey's
parallel action pending before this court (Civil No. 05-cv-274-
PB). In that case, I concluded that Carey stated, among other
claims, an Eighth Amendment claim premised upon the denial of

adequate dental care against an unnamed HCDOC dentist, who was later identified as Lemieux.  My Report and Recommendation was approved on December 27, 2005.  That claim currently is pending before this Court.  Because the claim, party, and available relief do not significantly differ between Carey's earlier action and this action, I conclude that the instant claim is duplicative.  Accordingly, I recommend dismissal of Carey's Eight Amendment denial of adequate dental care claim against Lemieux.

### 3.   Verbal Threats

Construed liberally, the complaint alleges that Watson and Thyng violated Carey's Eighth Amendment rights by subjecting him to insults and verbal and psychological abuse.  On November 22, 2006, Watson and Thyng allegedly called Carey to the guard station and "proceeded to insult and belittle [him], ordered him back upstairs to his cell, then immediately called him back down for more abuse."

This conduct, while unprofessional if it is true, does not state a cognizable claim under Section 1983.  It is well established that "[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983."  Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996).

See also Shabazz v. Cole, 69 F. Supp. 2d 177, 199 (D. Mass. 1999) (holding that allegations of threats, verbal harassment or profanity, without an injury or damage, do not state a claim under Section 1983) (citations omitted).  Given that Carey has alleged only one isolated incident of verbal abuse and has not demonstrated any resulting harm, I find that he has failed to allege an Eighth Amendment claim.  Accordingly, I recommend that this claim be dismissed in its entirety.

        4.   Inhumane Conditions of Confinement

     Carey alleges that defendants subjected him to inhumane conditions of confinement, including the denial of a lower bunk and certain hygiene items, in violation of his Eighth Amendment rights.

     Under the Eighth Amendment, prisoners are entitled to adequate shelter, including the "minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 832–34 (1994); Rhodes v. Chapman, 452 U.S. 337, 347–49 (1981).  As stated previously, to successfully allege an Eighth Amendment violation, a plaintiff must first plead facts which, if true, establish that a "sufficiently serious" deprivation occurred. Wilson v. Seiter, 501 U.S. 294, 298–99 (1991).  A plaintiff must

show that the conditions he was forced to endure were beyond the bounds of human decency, and that the prison officers intentionally or recklessly subjected him to those conditions. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("extreme deprivations are required to make out a conditions-of-confinement claim"); Wilson, 501 U.S. at 298-301.

First, Carey alleges that Watson intercepted his request slip for a lower bunk restriction, which Carey claims was necessary following his hernia operation. As a result of Watson's actions, the NCF Medical Department allegedly never received Carey request and he was temporarily denied a lower bunk. Shortly thereafter, the NCF Medical Department discovered that Carey was assigned to an upper bunk and immediately moved him to a lower bunk. Carey has not alleged that the temporary denial of a lower bunk caused him serious pain or harm; nor has he alleged that the conditions he was forced to endure were beyond the bounds of human decency. Accordingly, I conclude that he has not alleged a deprivation sufficiently extreme to establish a cognizable Eighth Amendment claim and recommend dismissal of this claim.

Second, Carey alleges that defendants forced him to use

11

rubber bands as dental floss and provided him with toothpaste that contained "carcinogenic Sodium Saccahrine."  His conclusory complaints do not allege deprivations sufficiently extreme to establish a cognizable Eighth Amendment claim.  Carey alleges no facts as to the frequency, duration and magnitude of the problems or any ensuing constitutional harm.  See Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990) (inmate must present sufficient facts to confirm seriousness of harm).  Accordingly, I conclude that he has failed to state an Eighth Amendment claim premised upon inhumane conditions of confinement and recommend dismissal of this claim.

     B.   <u>First and Fourteenth Amendment Claims</u>

         1.   Retaliation

Carey alleges that Watson increased his classification and required him to complete certain prison programs as a condition of his parole, all in retaliation for Carey's filing of administrative grievances.  Carey further alleges that Manseau subsequently sent him a new classification authorization, indicating that his C-2 classification had been increased to C-3.  Lacasse, Crompton, Blaisdell and Wrenn allegedly were responsible for the actions by subordinate officers Watson and Manseau.

12

To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  It is well-established that prisoners have a First Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right.  See Shabazz, 69 F. Supp. 2d at 197.  See also Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate against them for exercising that right).

Here, Carey alleges that Watson unjustifiably required him to complete certain prison programs as a condition of his parole, all in retaliation for Carey's filing of administrative grievances.  Carey challenged the requirements imposed by Watson in an appeal filed with Blaisdell and Wrenn, however, they failed to remedy the problem.  Crompton allegedly intercepted and denied Carey's appeal.

13

Carey further alleges that Watson telephoned the NCF
Classification Department and requested that his classification
be increased from C-2 (minimum security) to C-3 (medium
security).  At that time, Carey allegedly was four months from
his minimum parole date and had not received a single
disciplinary infraction.  Watson's actions allegedly were taken
in retaliation for Carey's filing of administrative grievances
and his challenge to the program requirements.  Under the
supervision of Lacasse, Manseau subsequently sent a new
classification authorization to Carey, showing that his C-2
classification was crossed out and C-3 hand-written in its place.
Lacasse, Crompton, Blaisdell and Wrenn allegedly were responsible
for the actions by Watson and Manseau.

Carey alleges that the above retaliatory actions by Watson
were motivated by Carey's filing of administrative grievances and
therefore were taken against him in reprisal for his exercise of
First Amendment freedoms.  Accepting Carey's allegations as true,
which I must do at this preliminary stage of the proceedings, I
conclude that he has stated a cognizable First and Fourteenth
Amendment retaliation claim against Watson, Blaisdell, Crompton
and Wrenn.  Because Carey has failed to allege sufficient

predicate facts against Lacasse and Manseau, I recommend that the claims against them be dismissed.

2.   Request for Transfer

Construed liberally, the complaint alleges that NCF officials denied Carey's request for a transfer from the NCF to the Lakes Region Facility in Laconia, in violation of his Fourteenth Amendment right to due process.  The Lakes Region Facility allegedly houses nonviolent offenders and provides conditions of confinement that are safer and more favorable for Carey in terms of personal and legal visits.

"The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."  Bazzetta v. McGinnis, 423 F.3d 557, 566 (6th Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 478 (1995)).  See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (stating that not every prison action that adversely affects the prisoner requires due process, such as transfer to a substantially less agreeable prison).  It is well-settled that a prisoner has no constitutional right to be incarcerated in a particular prison and that he may be transferred for any reason or for no reason at all, regardless of differing conditions.  See Meachum v. Fano,

427 U.S. 215, 225-28 (1976).  Even a transfer to a more restrictive facility with more burdensome conditions is within the normal limits or range of custody which the conviction has authorized the State to impose.  Id. at 225 (transfer of an inmate from one correctional facility to another, without more, does not violate the inmate's constitutional rights, even where conditions in one facility are more disagreeable).  Accordingly, I conclude that defendants' refusal to transfer Carey to the Lakes Region Facility, a safer and more favorable facility for Carey, does not rise to the level of a constitutional violation. I therefore recommend that his request for transfer be denied.

> 3.   Denial of Meaningful Access to the Courts

Construed liberally, the complaint alleges that the NHDOC denied Carey meaningful access to the courts, in violation of his Fourteenth Amendment right to due process.  Specifically, Carey alleges the NHDOC grievance forms and request slips are not numbered, thereby allowing prison staff to arbitrarily discard an inmate's grievance form or request slip.

"There is a fundamental constitutional right of access to the courts, founded both in the First Amendment guarantee of [the] right to petition for redress of grievances, and in the due

process clause which assures that no person will be denied the opportunity to present to the courts their claims concerning violations of fundamental constitutional rights." McDuffy v. Koval, 226 F. Supp. 2d 541, 548 (D. Del. 2002) (citations omitted).  The right of access to the courts is strongest in the context of constitutional claims and other civil rights actions. See BreMiller v. Cleveland Psychiatric Inst., 898 F. Supp. 572, 582 (N.D. Ohio 1995).  To establish a claim for denial of access to the courts, a plaintiff must show that he was denied access to the courts and suffered actual injury, such as interference with his efforts to pursue a claim.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Accepting Carey's allegations as true, I conclude that he has failed to identify any actual injury that resulted from the alleged denial of access to the courts.  While he claims that the NHDOC failed to number his grievance forms and request slips, he has not alleged that his request slips were discarded.  Carey has not alleged any ensuing constitutional harm related to the acts or omissions by the NHDOC.  Nor has he identified any act or omission by the NHDOC that has frustrated or impeded a specific legal claim pursued by Carey.  In fact, in a request slip dated

February 22, 2007, Carey concedes that he has four actions
pending before this Court and is in the process of "refiling [a]
federal suit against the Merrimack County Attorney's Office."
Since 2005, Carey has filed nine actions with this Court.
Without demonstrating that the NHDOC prevented him from
participating meaningfully in the legal process, Carey fails to
allege any constitutional deprivation.  Accordingly, I recommend
dismissal of this claim in its entirety.

     C.   Claim against the Hon. David Sullivan

     Named as a defendant in this action is the Honorable David
Sullivan, a New Hampshire Superior Court Judge, for actions taken
in his judicial capacity while presiding over Carey's criminal
proceedings.  Without providing any predicate facts, Carey claims
that Sullivan acted improperly by imposing his sentence and by
suggesting to the NHDOC that Carey complete certain program
requirements as a condition of parole.[3]  For the reasons stated

---

     [3]To the extent Carey challenges the fact or duration of his
state court confinement, his claims may only be brought in a
habeas corpus petition pursuant to 42 U.S.C. § 2254.  See Preiser
v. Rodriguez, 411 U.S. 475, 488-90 (1973) (holding that a
prisoner cannot use a Section 1983 action to challenge the fact
or duration of his confinement).  Accordingly, to the extent
Carey challenges the sentence imposed by Sullivan, I recommend
that the claim be dismissed.

below, Sullivan is not a proper defendant under Section 1983 and
is entitled to absolute judicial immunity.

Judges are absolutely immune from suits seeking monetary
damages for actions taken in their judicial capacities.  See
Mireles v. Waco, 502 U.S. 9, 11–12 (1991); Stump v. Sparkman, 435
U.S. 349, 356–57 (1978).  Immunity is overcome only in two
circumstances: 1) where the actions are outside the scope of the
judge's judicial capacity; or 2) where the actions, though
judicial in nature, are taken in the complete absence of all
jurisdiction.  Id.  While actions for injunctive relief are not
barred by the doctrine of absolute immunity, Section 1983
precludes such actions against judicial officers "unless a
declaratory decree was violated or declaratory relief was
unavailable."  42 U.S.C. § 1983 (West Supp. 2001).

Here, Sullivan appears to have been acting in his judicial
capacity and within his jurisdiction by presiding over Carey's
criminal proceedings.  Carey has not alleged that Sullivan
violated a declaratory decree or that declaratory relief is
unavailable in the state courts.  Nor has he alleged facts
supporting the application of any exception to absolute judicial
immunity.  I conclude, therefore, that the complaint fails to

state a Section 1983 claim against Sullivan in his official or
individual capacity and recommend dismissal of the claims against
him.  See Roth v. United States, 952 F.2d 611, 613 (1st Cir.
1991) (requiring plaintiff to allege facts regarding each
material element necessary to state an actionable legal claim).

II.  Official Capacity Claims

     Construed liberally, the complaint seeks declaratory,
injunctive and monetary relief for wrongs committed by the
defendants as state actors in their official capacities.  It is
well-settled that the Eleventh Amendment bars suits against state
entities and state agents working in their official capacities
unless the state has expressly waived immunity, which has not
been done by New Hampshire for actions brought under Section
1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,
Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State
nor agencies acting under its control may be subject to suit in
federal court); Will v. Michigan Dep't of State Police, 491 U.S.
58, 71 (1989)(holding that neither a state nor its officials
acting in their official capacities are "persons" under Section
1983).  Official capacity suits against officers of an agency are
simply "another way of pleading an action against an entity of

20

which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55.  To
the extent Carey brings official capacity claims for monetary
relief against the defendants, all of whom are officials or
employees of the NHDOC, NHSP or NCF, I recommend that those
claims be dismissed.

On the other hand, official capacity actions against state
actors for prospective injunctive relief are not treated as
actions against the state and may be considered under Section
1983.  <u>See</u> <u>Will</u>, 491 U.S. at 71 n.10; <u>Ex parte Young</u>, 209 U.S.
123, 159–60 (1908).  Thus, Carey is not barred from bringing
claims for prospective injunctive relief against the defendants
in their official capacities.

Conclusion

For the reasons stated above, I conclude that Carey has
alleged the following claims: (1) an Eighth Amendment denial of
adequate medical care claim against Lacasse, Manseau and Watson;
and (2) a First and Fourteenth Amendment retaliation claim
against Watson, Blaisdell, Crompton and Wrenn.  I recommend
dismissal of all remaining claims.

If this recommendation is approved, the claims as identified
in this report and recommendation, will be considered for all

purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992); United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date: May 15, 2007

cc:  William J. Carey, pro se

22